The Honorable Henry J. Osterloh State Representative, District 66 1314 Starfield North Little Rock, AR 72116
Dear Representative Osterloh:
This is in response to your request for an opinion regarding the response of a school district when, in light of recent governmental cuts in State aid, the school district determines that it will not have sufficient funds to operate at current level for the remainder of the school year. You ask, if this situation were to occur,
1. Should the district close its schools and cease paying its teachers without incurring liability for teachers' salaries?
2. Should the district reduce all teachers' salaries on a pro rata basis as provided in Ark. Stat. Ann. 80-1328? Or,
3. Should the district lay off some, but not all, teachers?
You note in your request that Ark. Stat. Ann. 80-509(1), Act 169 of 1931, provides that if it should become apparent that the schools cannot be operated for the remainder of the school year without incurring unlawful indebtedness, it shall be the duty of the school directors to close the school and cease paying the teachers for the remainder of that fiscal year, and each contract made with the teachers shall be subject to that contingency, and the district shall not be liable for teachers' salaries for the time the school is so closed.
That section also provides for personal liability for directors who, participate in keeping a school open and incurring additional expenses, which would cause increased indebtedness of the district herein prohibited.
However, you further note that Ark. Stat. Ann. 80-1335, passed in 1981, provides that any provision in a teacher's contract, specifying that the employee's salary may be decreased to conform to legal fiscal requirements or any other attempt therein to make the salary to be paid to the employee less than definite and certain as to the minimum amount of salary is hereby declared null and void as opposed to the public policy of the State of Arkansas.
Ark. Stat. Ann. 80-1336 provides that, in such a case, the amount of stated salary without such qualifying language shall be the minimum amount the employee is entitled to receive for services rendered.
In addition, you mention the State requirement that a teacher be employed through a written contract stipulating a stated salary for a stated period of time.
Of further relevance are two provisions from Act 34 of 1983 (Special Sess.) (School Finance Act), Ark. Stat. Ann. 80-850.17(d) and 80-850.20(a) which make exceptions to mandatory salary requirements in order that school districts' expenditures no exceed legal revenues for that particular year. Additionally, Act 34 of 1983 supersedes the pro rata provision in the Teachers' Minimum Salary Law, Ark. Stat. Ann. 80-1328 (Repl. 1980) referred to in your second question.
In attempting to reconcile these apparent discrepancies, an effort must first be made to read these statutes together. This does not appear possible, however, as Ark. Stat. Ann. 80-1335 prohibits modifying contract amounts in order to conform to fiscal requirements and thus the exception to mandatory salary amounts referred to in Act 34 would require salary adjustments prior to the execution of contracts and not after-the-fact adjustments.
What is missing from the facts you have presented is language from an actual contract addressing the possibility of insufficient revenues to fulfill contractual obligations by a school district. Obviously, if a contract contains no such clause, a district would be required to honor an employment contract. On the other hand, if the contract provides that its duration is contingent upon available revenues, an argument could be made that while the length of the contract is indefinite the amount of compensation due during its duration is not, and hence, not violative of Ark. Stat. Ann. 80-1335.
For direction, reference is made to the attached standard teacher's contract supplied by the Department of Education. You will note the provision that calls for a refund of unearned salary as provided in Ark. Stat. Ann. 80-1331 (Repl. 1980). This 1965 law, however, only applies to the following:
 Any contract entered into pursuant to this Act (80-1330 — 80-1332) whereby payments are to be made prior to the commencement of the teaching duties under such contract in the school year covered thereby, shall contain a clause clearly setting forth the liability of any teacher who receives payments prior to the commencement of teaching duties and who refuses to perform under the terms of the contract. Such clause shall be to the effect that any school teacher breaching such a contract shall be indebted to the school district for the amount of moneys received by him under the contract prior to the commencement of his teaching duties. If any teacher fails to repay any money owed to a school district upon a contract breached by him, the secretary of such school district shall forthwith certify the same to the State Department of Education, and the State Department of Education shall revoke such teacher's license to teach until all of the money is repaid.
Based upon the facts presented thus far to this Office, the only conclusion possible is that school districts must honor all teacher contracts under the terms and conditions specified therein. Thus, absent specific contractual provisions, a school district could not unilaterally act to modify or rescind an individual teacher's contract. At the same time, however, school administrators remain legally bound to close schools in order to prevent expenditures from exceeding revenues.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General C. Randy McNair, III.